CHIEF JUSTICE PETERS
delivered the opinion op the court:
This litigation, necessarily protracted by the opposing interests of an unusually large number of parties, and involving questions difficult of solution, has arisen primarily upon the will of John J. Flournoy, published on the 3d day of September, 1813, and is in the following language, omitting the introductory part and the codicil:
“ I, John J. Flournoy, of the county of Boone, and State of Kentucky, reflecting on the certainty of death and the uncertainty of the time when it may take place, have determined to make this my last will and testament in the manner and form following, to-wit: I give and bequeath to my beloved wife, Agnes Flournoy, the whole of my estate of every kind, both real and personal, during her natural life, except as shall be otherwise provided in an after part of this my will.
‘■‘■Item — I recommend Nancy Grant, John J. F. Wills, Lucy Flournoy, and John Fowler, to the tender consideration of my wife, Agnes Flournoy, hoping she will try to assist them as much as she consistently can, having respect, unfortunately, to the numerous and *519 heavy debts that I owe, and will require her utmost diligence to discharge.
“Item. — At the death of my said wife Agnes, I desire that one half of my estate, both real and personal, may be divided amongst my brothers and sisters, and their heirs forever. The balance to be at the disposal of my said wife, to be managed as she may think proper.
“Item — I do constitute and appoint my wife, Agnes Flournoy, sole executrix to this my last will and testament, authorizing her to make and receive conveyances of land where I have made contracts.”
The codicil need not be inserted, as it only authorized the wife of the testator to emancipate four favorite slaves by name, and give them a small stock of cattle and some other things of little value, not material to this controversy.
The testator having died at his residence in the then county of Campbell, in 1835, without having altered or republished his will, the same was, at the November term, 1835, of the Campbell county court, probated, and his widow, as we may assume, took the whole of his large and valuable estate into her possession, and, as his executrix, undertook the execution of his will. She retained and managed the estate till her death, in July or August, 1840, having previously thereto, by her will, executed the power of appointment as to the one half of the estate of her late husband conferred upon her by his will. And her will was admitted to record in the county court of Kenton in August, 1840 — the county of Campbell having been divided during the sitting of the Legislature in the winter of that year, and the county of Kenton created and established by legislative enactment — the residence of Mrs. Flournoy, which was also the residence of her husband at the time of his *520 death, and all the estate that he owned in the county of Campbell, were included in the limits of the new county of Kenton.
It would be a waste of time and labor to insert the whole of Mrs. Flournoy’s will, which is somewhat voluminous, in this opinion; only so much of it, therefore, as is deemed necessary to a clear understanding of the origin and history of this litigation, and of the various questions presented for judicial determination, will be referred to or recited.
The testatrix, in the preamble to her will, declares her intention as follows: “ Being authorized by the last will of my late lamented husband, John J. Flournoy, to dispose of the one half of the estate, real and personal, left by him at the time of his death, in such manner as I may think proper, and desiring by this, my last will and testament, to execute said power to the full extent of the same, I do devise and bequeath all and every part of the said moiety of real and personal estate, and all my other estate, of what kind and nature soever, in manner and form as follows, to-wit,” &c.
After devising to her brothers and a sister several distinct parcels of land located in Boone county, which constituted a part of her husband’s estate, but not equal in quantity or value, perhaps, to the one half of the whole of his lands, and after disposing a portion of his slaves and other property amongst her own kindred— brothers, sisters, nephews, and nieces — by specific bequests, not amounting in all to the one half of the slaves and personalty of her late husband, as appears from a schedule attached by her to her will, and is satisfactorily shown otherwise, she added a residuary clause in the following words: “All the residue of my estate, of every kind and description whatever, whether of the moiety I *521 have a right to dispose of or of my own individual property, either real, personal, or mixed, I give and bequeath to my sisters, to be equally divided between them- — share and share alike — after deducting from the said residuum six hundred dollars, to be paid out of the same by my executors to Lydia Ann and Kitty, daughters of my sister, Keturah Grant. Should the residue of my estate be less than six hundred dollars, then, whatever .it be, I direct it to be paid to said Lydia Ann and Kitty; and whatever portion of said residue may be given to my sister Keturah, I direct my trustee, Samuel Winston, to hold in the same manner and for the same purposes, in all respects, as in my devise to said Keturah.”
The testatrix appointed Matthews Flournoy, Samuel Winston, and Moses Y. Grant, her executors, of whom Winston alone qualified.
The devisees were put into possession of the several parcels of land, and the slaves devised to them respectively, and Some of the specific money legacies perhaps paid over to the legatees, by Winston as her executor. But the whole of the residue of the estate of John J. Flournoy he took into his possession, upon the death of his testatrix, Mrs. Flournoy, and managed and controlled the greater part thereof up to his death, which occurred in 1850, having previously made and published his last will and testament, wherein he appointed his wife, Mrs. Mary Winston, his executrix, who undertook the execution of the same, it having been probated in the Campbell county court.
On the 4th of May, 1852, this action was brought in the Kenton circuit court by Elliott and others, the residuary devisees of Mrs. Agnes Flournoy, against Mrs. Mary Winston, executrix, and the devisees and heirs of Samuel Winston, deceased, the devisees and heirs of John J. *522 Flournoy, deceased, and against a part of the devisees of Mrs. Agnes Flournoy, and other persons who were in possession of different parcels of land which the testator, John J. Flournoy, owned at his death, to compel, in the language of the petition, Mrs. Mary Winston, executrix of Samuel Winston, deceased, to render a just and true account of the transactions of her testator as the executor of John J. Flournoy, and also of Mrs. Agnes Flournoy to deliver up the real and personal property of both estates, and to pay over the assets which were in his hands, arising from claims collected from rents, hires, and profits from all other sources, to be divided amongst those entitled thereto; and to deliver up to plaintiffs their just portions, as residuary devisees of Mrs. Agnes Flournoy.
While the right of the plaintiffs to the relief they seek is controverted, the defendants, as among themselves, are not harmonious, but by various cross-pleadings assert claims to the estates antagonistic, not only to those of the plaintiffs, but to those of each other.
With these conflicting interests thus presented in the pleadings, the case was prepared for trial with no inconsiderable labor and expense, as is manifested by this voluminous record.
And, on final hearing, the circuit judge was of the opinion, from the evidence, that John J. Flournoy, the testator, at his death was not the owner, nor in possession of any portion of the property, real or personal, that he had in 1813, the time of making his will; but the whole of the property was acquired thereafter, and consequently Mrs. Flournoy could npt, and did not, acquire any property under and by virtue of said will; and it did not appear from the evidence that Mrs. Flournoy was possessed of any other property except that which she *523 held under the will of her testator; and he therefore concluded that the Kenton circuit court had no jurisdiction to order a settlement, partition, and distribution, of the estate of John J. Flournoy, he having died in the county of Campbell, where his will was probated and his executrix qualified, and for that reason dismissed the plaintiff’s petition and all the cross-petitions. From which judgment the devisees and heirs of John J. Flournoy have appealed.
It does not appear in the record what real estate testator owned when he published his will. He died without issue about twenty-two years thereafter, having in the meantime acquired all the lands which he owned at his death; and the first question to be considered is, did these after-acquired lands pass by his will.
After the enactment of 1797, authorizing a devise of after-acquired lands, the true doctrine on the subject, (until the adoption of the Revised Statutes), according to the opinion of the supreme court of the United States in Smith et al. vs. Edrington (8 Cranch, 66), and recognized by this court in Walton’s heirs vs. Walton’s executrix et al., and other subsequent cases, is, whether land acquired after the publication of the will shall pass by the will, or descend to the heirs, is a question to be solved by a proper construction of the whole will.
If, from the will itself, it shall appear more reasonable to infer an intention that after-acquired land should pass by it than that it should remain undevised, then it would pass by the will; otherwise, if the contrary intention shall seem more reasonable, the land will descend. And if there be nothing in the will to lead to the one deduction rather than the other, land acquired by the testator after its publication should descend as estate undevised.
*524 By these principles this will must be tested. Having-made provision for his wife, the testator made no specific devise or bequest to any one; and having no issue, he directed, at the death of his wife, that one half of his real and personal estate should go to his brothers and sisters, and gave his wife power to dispose of the other half.
The half devised to his brothers and sisters went where by law the whole would have gone if he had died intestate, subject to his wife’s right of dower; but he intended to provide for his wife during her life, and if she disposed, of the part she was authorized to do at her death, a division was to take place, which, as he had expressed no preference for any devisee of his own blood, he intended to embrace the whole of the estate which he owned at his death. And this view is further fortified by the fact that the testator directs the whole of his estate, both real and, personal, to be divided, at the death of his wife, in the manner authorized and prescribed by his will, the language embracing every thing he had, importing an intention that all the estate which he owned at his death should be, at the time designated, divided, as he evidently did not intend to die intestate as to any part.
Mrs. Flournoy recites, in the preamble of her will, that she made it in execution of a power conferred upon her by her husband in his will, and appellants and their ancestors acquiesced in the disposition she made of the part she claimed the right to devise for many years, wdthout an effort to disturb her devisees in the enjoyment of the property held under her will, or questioning her right to do so; thus showing that they construed the will as this court does. And the more reasonable construction of the instrument, as it seems to us, is, that the *525 testator intended the lands acquired by him after he made his will should pass by it.
As to the question of jurisdiction, but little need be said. The personal representative qualified in Kenton county, and the action for the settlement and distribution of her estate was properly brought in the Kenton circuit court, according to sections 96 and 97, Civil Code. Winston, after the death of Mrs. Flournoy, became the representative of both estates. The settlement of the estate of Mrs. Flournoy involved, necessarily, the settlement. of that of her husband. If separate suits were brought for the settlement of each estate, the same persons must be parties to both actions. But the plaintiffs in neither could obtain a redress of grievances until the estate of the testator was settled. Jurisdiction in the one case necessarily and incidentally carried with it jurisdiction in the other case. In order, therefore, that complete justice might be done, the chancellor would settle both estates, and, having done so, would render the proper judgments, and not turn parties, whose rights were already ascertained, out of the Kenton circuit to go to the Campbell circuit, merely to enter judgments and order executions. Neither the letter nor spirit of sections 96 and 97, Civil Code, requires this, to be done.
Another important question is presented in the pleadings, and which, although not now directly before us, must come up in the further progress of the case, and whieh we deem it proper to settle.
At the time the testator published his will, he had six brothers and three sisters living. Before his death, three of his brothers and all of his sisters were dead, and all of them, except one sister who never married and died childless, left issue; and whether the devises which these deceased brothers and sisters would have taken if they *526 had survived the testator lapsed, is the question, and must be determined by the proper construction of the will, the language of which is : “At- the death of my said wife Agnes, I desire that one half of my estate, both real, and personal, may be divided amongst my brothers and sisters, and their heirs forever.” The phraseology of this particular clause is somewhat peculiar.. Instead of saying he gave or devised the one half of his real and personal estate to his brothers and sisters and their heirs, he directs- how, or rather amongst whom, it shall be divided, upon the happening of an event which might be postponed; and, out of so numerous a family, it must have occurred to the testator that, in the meantime, some of his brothers and sisters might die, hence we must presume he used the words “ their heirs forever,” to designate with whom the division should be made, in case of the death of any of his brothers and sisters, using them as words of purchase, and not of descent or limitation.
These views render an adjudication of other questions discussed by counsel on the original appeal unnecessary, and also on the cross-appeal of Winston’s executors now unnecessary.
Wherefore, the judgment is reversed, and the cause remanded for further proceedings and orders consistent herewith.